IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FRANKLIN COVEY CO.,<br><br>                Plaintiff,<br><br>v.<br><br>COMMERCIAL METALS COMPANY,<br><br>                Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:16-cv-1221-CW<br><br>District Judge Clark Waddoups |

Before the court is Defendant Commercial Metals Company's Motion to Dismiss, in which Commercial Metals asserts that this court lacks personal jurisdiction over it and that the District of Utah is not the proper venue for this action. (Dkt. No. 8.) Because Plaintiff Franklin Covey does not allege the court has general personal jurisdiction and there are no facts in the record that would support such a conclusion, the court addresses only whether specific personal jurisdiction exists. (Dkt. Nos. 2 ¶¶ 5–7 & 15 p. 10.) Having considered the arguments set forth in the briefs and during a hearing on August 10, 2017, the court determines that Franklin Covey has not met its burden of proving a prima facie case of personal jurisdiction and DISMISSES this action for lack of jurisdiction.

## BACKGROUND

Franklin Covey, a Utah corporation with its principal place of business in Salt Lake City, Utah, brings this action for copyright infringement under 28 U.S.C. § 1338(a) and 17 U.S.C. § 501. (Dkt. No. 2 ¶¶ 1 & 3.) In its complaint, Franklin Covey alleges that Commercial Metals, a Delaware corporation with its principal place of business in Texas, used Franklin Covey's

copyright-protected content in employee training sessions without authorization to do so. (*Id.* ¶¶ 4 & 40.) The following factual allegations are based upon the complaint and declarations submitted by the parties. The court accepts them as true only for the purposes of this motion.

Commercial Metals is a global metal manufacturing, recycling, and trading company that makes steel beams for construction. (Dkt. No. 8, p. 7–8.) It is headquartered in, and all of its high level management is located in, Irving, Texas. (Dkt. No. 8-1 ¶ 4.) Commercial Metals has 7,871 employees in twenty-six states. (*Id.* ¶¶ 6 & 8.) And it has an international presence. (*Id.* ¶ 8.) In Utah, Commercial Metals has one location and seventeen employees. (*Id.* ¶¶ 5–7.) The Utah employees make up 0.2% of Commercial Metals's United States work force. (*Id.*) Commercial Metals occasionally provides training seminars for its employees in various locations across the United States. (Dkt. No. 8, p. 8.) During those seminars, employees attend lectures and use corresponding workbooks. (*Id.*) Franklin Covey alleges that Commercial Metals's employees are instructed in management and "prioritization" strategies. (Dkt. No. 2 ¶¶ 43–46.)

Franklin Covey is a global, public company that helps organizations and individuals enhance performance in the categories of leadership, execution, productivity, trust, sales performance, customer loyalty, and education. (Dkt. No. 2 ¶ 9.) It has copyrighted several products aimed at teaching its clients in these areas, including *The 5 Choices: The Path to Extraordinary Productivity* and associated training materials, The Time Matrix model, *The 7 Habits of Highly Effective People* and other related products, and *The 4 Disciplines of Execution*. (Dkt. No. 2 ¶¶ 18–19, 26, 33–37, 39.)

Brian Thompson is the Manager of Learning and Development for Commercial Metals. (Dkt. No. 15-1 ¶ 6.) Prior to joining Commercial Metals, Mr. Thompson worked for a different company where, in approximately 2013, he had occasion to meet Peter Montgomery, who is the Client Partner for Franklin Covey. (*Id.* ¶¶ 2 & 7.) At that time the two men worked together, and Mr. Thompson purchased Franklin Covey's products for his then-employer. (*Id.* ¶¶ 8–9.) During their past interactions, Mr. Montgomery communicated that Franklin Covey is located in Utah. (*Id.* ¶ 10.) On July 15, 2016, after Mr. Thompson had begun working for Commercial Metals, the two men met at its office in Irving, Texas to discuss Commercial Metals purchasing Franklin Covey's services. (*Id.* ¶ 12.) Mr. Thompson informed Mr. Montgomery that Commercial Metals did not need Franklin Covey's services or products because it had a workbook of its own. (*Id.* ¶¶ 13–15.) According to Mr. Montgomery, Mr. Thompson showed him a workbook, entitled "Essentials of Management," that contained materials related to Franklin Covey's products. (*Id.* ¶ 15.) He also asserts that Mr. Thompson had copies of Franklin Covey's products on his shelf. (*Id.* ¶ 15.) Mr. Thompson reported to Mr. Montgomery that the materials were used in employee training seminars. (*Id.* ¶¶ 13–14, 19.) Based on this encounter Mr. Montgomery notified Mr. Thompson on July 22, 2016, that he believed the materials infringed Franklin Covey's copyrights and that Commercial Metals needed a license to use them; Mr. Thompson denied this. (*Id.* ¶¶ 20–22.)

Based on his interactions with Mr. Thompson and knowledge of how Franklin Covey's products work, Mr. Montgomery states in a declaration to the court that he "believe[s]" Commercial Metals's employees attend seminars where they receive copies of the workbooks and are instructed on how to use the concepts. (*Id.* ¶¶ 23–28.) He further believes that

Commercial Metals "instructed and expected its employees to apply, implement, and exploit the training materials." (*Id.* ¶ 32.) This is at least in part because of his understanding that Franklin Covey's materials are only valuable to organizations using them if they are implemented beyond the training sessions. (*Id.* ¶ 31.) Mr. Montgomery offers no further foundation to support that he has personal knowledge of the facts he asserts.

Mr. Thompson declares that the materials Mr. Montgomery saw were created in Texas and that no seminars ever occurred in Utah; Franklin Covey does not dispute these facts. (Dkt. No. 8-1, ¶¶ 10–11.) At least two supervisors based in Commercial Metals's Utah location attended training seminars in Arizona. (*Id.* ¶ 12; Dkt. No. 22-2 ¶¶ 8–9.) In his declaration attached to the reply brief in support of this motion, Mr. Thompson states that the Utah supervisors attended the seminar on September 21, 2016, and September 23, 2016, and that the seminar they attended used different materials than those Mr. Montgomery saw on July 15, 2016. (Dkt. No. 22-2 ¶¶ 9–10, 12.) Mr. Thompson also declares that Commercial Metals never instructed its employees to use the training materials in their offices or to otherwise instruct their employees based on what they learned at the seminar, but that the employees "are free to do as they please with the training materials." (*Id.* ¶¶ 14–18.)[1] Franklin Covey offers no supportable evidence to contradict Mr. Thompson's declarations.

---

[1] Commercial Metals also presents facts related to the number of offices it has in other states and the number of employees from other states who attended the seminar the Utah supervisors attended. (Dkt. Nos. 8-1 ¶ 9; 22-2 ¶ 11.) The court does not detail those facts here because they are immaterial to the question of whether it can exercise personal jurisdiction over Commercial Metals. The question before the court is simply a matter of Commercial Metals's contacts with Utah, not how its contacts in Utah compare to other jurisdictions.

I.   PERSONAL JURISDICTION

On a motion to dismiss for lack of jurisdiction, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057. Franklin Covey may satisfy its burden "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010) (citation and internal quotation marks omitted). And "[a]ll factual disputes are resolved in favor of the plaintiff[] when determining the sufficiency of this showing," *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009), so long as the plaintiff's facts are "well-pled (that is, plausible, non-conclusory, and non-speculative)," *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008).

When considering whether personal jurisdiction is proper in a federal question case, federal courts "must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000). Where the statute under which the plaintiff has sued does not provide for nationwide service of process, as is the case with the Copyright Act, the court looks to Federal Rule of Civil Procedure 4(k)(1), which governs service and instructs courts to "appl[y] the forum state's personal jurisdiction rules.'" *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000) (quoting *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d. Cir. 1997)); *see also Daimler AG v. Bauman*, 134 S.Ct. 746, 753 (2014) ("Federal courts ordinarily follow state law in

determining the bounds of their jurisdiction over persons."). The Utah legislature, in effort to "ensure maximum protection to citizens of this state," has said Utah's long-arm statute extends jurisdiction "to the fullest extent permitted by . . . due process." Utah Code Ann. § 78B-3-201. Thus, the proper inquiry here is whether it would offend due process for the court to exercise jurisdiction over Commercial Metals. *See Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (applying the Nevada long-arm statute, which also reaches to the broadest extent of due process).

Due process permits a court to exercise personal jurisdiction if the defendant has "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and internal quotation marks omitted). In other words, jurisdiction is proper where "defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate being haled into court there.'" *AST Sports Sci.*, 514 F.3d at 1057 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Thus, the court must satisfy itself both that there are sufficient minimum contacts and, if there are, that fairness permits the exercise of jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985).

Minimum contacts may be established by either a showing of general or specific jurisdiction. Because the record on this case makes clear, and the parties agree that Commercial Metals is not "at home in [Utah]," *Goodyear Dunlop Tires Operation, S.A. v. Brown*, 564 U.S. 915, 919 (2011), only specific jurisdiction is at issue. To assess whether specific jurisdiction exists, courts "focus[] on 'the relationship among the defendant, the forum, and the litigation'" and determine whether "the defendant's suit-related conduct . . . create[s] a substantial

connection with the forum State." *Walden*, 134 S.Ct. at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

The Tenth Circuit requires that the plaintiff show "that (1) the defendant has purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state; and (2) the litigation results from alleged injuries that arise out of or relate to those activities." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1160. "Random, fortuitous, or attenuated contacts" alone are not enough, nor are "the unilateral activit[ies] of another party or third person." *AST Sports Sci., Inc.*, 514 F.3d 1054, 1058 (10th Cir. 2008). Rather, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S.Ct. at 1121.

"In the tort context," the Tenth Circuit asks if "the nonresident defendant 'purposefully directed' its activities at the forum state." *Dudnikov*, 514 F.3d at 1071. One measure of such purposeful contact in the realm of intentional torts is the *Calder* effects test, which requires "(a) an intentional action . . . that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state." *Id.* at 1072 (distilling the Supreme Court's analysis in *Calder v. Jones*, 465 U.S. 783 (1984)).

The Tenth Circuit applied this test and concluded the defendant had "purposefully directed" its conduct toward the forum state in *Dudnikov*. 514 F.3d at 1077–78. There, the plaintiffs lived in Colorado and operated an online business selling items by auction on eBay from their home. *Id.* at 1067. The store's eBay profile listed Colorado as its location and provided a link to its website, which also said the store was in Colorado. *Id.* at 1068. The defendant believed that one of the plaintiffs' items infringed its copyright, so it contacted eBay in California to have the auction of that item canceled. *Id.* at 1067. The plaintiffs sued in Colorado

for declaratory judgment that they were not infringing. *Id.* The court ultimately concluded that, although the defendant was never physically in Colorado and did not make any direct contact with the state, it contacted eBay with the goal of shutting down the auction, the effects of which it had notice would be felt in Colorado. *Id.* at 1077–78. Thus, the defendant's intentional conduct outside the forum, was knowingly aimed at the forum, which was sufficient to show that the defendant had purposefully directed its conduct at the forum. *Id.*

Here, it is undisputed that Commercial Metals's headquarters are in Texas, that Commercial Metals's training materials were prepared in Texas, and that the training seminars that Utah employees attended occurred in Arizona. (Dkt. Nos. 2 ¶ 2; 15-1 ¶ 12; 8-1 ¶¶ 10–12.) Under *Dudnikov*, however, facts showing that Commercial Metals intended to have an impact in Utah might satisfy the purposefully directed requirement. Therefore, material to this matter is the parties' dispute over whether Commercial Metals's employees were instructed to take the allegedly infringing workbooks back to their home office and/or to instruct their employees from those workbooks. (Dkt. Nos. 15-1 ¶ 32; 8-1 ¶ 13; 22-2 ¶¶ 14–18.)

According to Franklin Covey, Commercial Metals committed an intentional act aimed at Utah by inviting leaders from its Utah office to attend training seminars in neighboring Arizona, where they were given workbooks that may have contained infringing materials, and by encouraging them to implement those workbooks in Utah. (Dkt. No. 15, pp. 6–7. *But see* Dkt. No. 22-2 ¶¶ 7–12.) But Franklin Covey provides no evidence to support this assertion other than Mr. Montgomery's belief that this was Commercial Metals's intention and instruction to its employees. (Dkt. No 15-1 ¶ 32.) He based this belief only on his experience using Franklin Covey's materials. (*Id.* ¶¶ 20–21.) Mr. Montgomery's belief alone does not amount to a prima

facie case of jurisdiction in light of Mr. Thompson's declaration that the instructors are not

trained to direct seminar participants to take the materials to their home offices, that the

materials' main purpose is for use at the seminar, and that trainees are free to do as they please

with the material after the seminar. (Dkt. No. 22-2 ¶¶ 14–18.)

Other than its unsupported allegations about the Utah supervisors, Franklin Covey points

the court to no facts showing Commercial Metals had relevant contacts with Utah. Instead

Franklin Covey relies upon *Systems Designs, Inc. v. New Customware Co.*, Inc., 248 F. Supp. 2d

1093 (2003), to argue that the act of producing content in violation of a copyright that

Commercial Metals knew, or should have known, was based in Utah was an intentional action

"aimed at Utah." (Dkt. No. 15, pp. 11–13.) In *Systems Designs*, the court concluded that the

national trademark registry provided the defendant with constructive notice that the plaintiff had

trademarked the name "CustomWare" and that it had done so in Utah before the defendant

adopted a nearly identical name. *Id.* at 1098. The court concluded that by infringing a trademark

registered in Utah when combined with "something more"— a website that invited online

business by advertising that it had previously done business with larger corporations that had a

significant presence in Utah, *id.* 1095, 1099—the defendant had "expressly aimed its actions at

the Utah market." *Id.* at 1100.

*Systems Designs* is not precedential, and the court is not persuaded by its reasoning,

especially in light of more recent Supreme Court and Tenth Circuit case law. *Systems Designs*

places a premium on the fact that the defendant was on notice that the plaintiff had registered the

trademark in Utah, but that improperly focuses on the plaintiff's conduct, which the Supreme

Court held in *Walden* is irrelevant to the minimum contacts analysis. 134 S.Ct. at 1125 ("The

proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."); *see also Dudnikov*, 514 F.3d at 1075 (asserting that courts should look at "defendant's intentions—where was the 'focal point' of its purposive efforts," rather than "where . . . the alleged harm actually [was] felt by the plaintiff," when deciding whether a defendant's intentional conduct was expressly aimed at the forum and that "the forum state itself must be the 'focal point of the tort'" (citation and internal quotation marks omitted)). Unlike *Dudnikov* where the defendant caused an event to occur in the forum state and in turn injured the plaintiff there, in *Systems Designs* the defendant's use of the trademarked name was unrelated to Utah other than that the plaintiff felt the injury here. 248 F. Supp. 2d. at 1100. The court in *System Designs* was satisfied by the plaintiff's connections to the forum, but after *Walden*, that is not the law. *Walden*, 134 S.Ct. 1122 ("[T]he relationship must arise out of contacts that 'defendant *himself*' creates with the forum state."). Furthermore, this case lacks the "something more" that the *Systems Designs* court looked for. 248 F. Supp. 2d. at 1099. The only connection with Utah, other than Mr. Montgomery's belief about the instruction to bring the materials back to Utah, was the fact that the copyright holder was a Utah citizen. Thus, *Systems Designs* does not govern and is factually distinct.

In sum, Franklin Covey has failed to show at least the first two elements of the effects test and has not otherwise demonstrated that Commercial Metals purposefully directed its alleged tortious conduct at Utah. Because Franklin Covey has failed to prove that Commercial Metals purposefully directed its activities at Utah, it has failed to prove that sufficient minimum contacts exist for the court to exercise personal jurisdiction over Commercial Metals. Therefore, the court

declines to consider whether Franklin Covey's injuries arise out of Commercial Metals's conduct or if principles of fairness would permit the court to exercise jurisdiction.

## II.  JURISDICTIONAL DISCOVERY

Additionally, Franklin Covey is not entitled to jurisdictional discovery. Generally, "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling-Temco Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975). The court has discretion in deciding whether to grant jurisdictional discovery, but abuses that discretion when a denial of discovery prejudices a litigant. *Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). "A litigant is prejudiced where 'pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Id.* Where "jurisdictional discovery would . . . [be] futile," however, the plaintiff is not prejudiced by the denial of such discovery. *See id.* at 1196. It is Franklin Covey's burden to prove it is entitled to jurisdictional discovery. *Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 n.11 (10th Cir. 2010).

Here the requested discovery would be futile. Franklin Covey has requested discovery in two categories: (1) "[Commercial Metals]'s knowledge of [Franklin Covey's] location" and (2) "[Commercial Metals]'s directions to its leaders regarding the use and application of [Franklin Covey's] copyrighted materials." (Dkt. No. 15 p. 12.) Franklin Covey is not entitled to the first category because any resulting evidence would have no bearing on jurisdiction. Even if Franklin Covey proved Commercial Metals knew it was located in Utah, Franklin Covey's location alone does not support jurisdiction. *See Walden*, 134 S.Ct. at 1121. And as discussed below, there are

no well-pled facts tying Commercial Metals's allegedly tortious conduct to Utah other than Franklin Covey's presence here.

Franklin Covey is not entitled to the second category of discovery because it has not pled facts that, if proven, would "create a substantial connection between [D]efendant's suit-related conduct" and Utah. *Id.* at 1121–22. It is insufficient for a plaintiff seeking jurisdictional discovery to identify a category of evidence that "possibl[y]" could demonstrate minimum contacts, when it is "improbable" that it would actually do so. *Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.*, 385 F.3d 1291, 1299 (10th Cir. 2004); *see also Breakthrough Mgmt.*, 629 F.3d at 1189–90 ("Indeed, [plaintiff]'s conclusory assertion that jurisdictional discovery was necessary seems almost like an attempt to use discovery as a fishing expedition rather than to obtain needed documents to defeat [jurisdiction]." (citation and internal quotation marks omitted)). In *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008), the Ninth Circuit affirmed a district court's denial of jurisdictional discovery where there were certain pieces of evidence that "might be jurisdictionally relevant" but where the plaintiff had failed to allege facts in its complaint and affidavit that such evidence would support, leading the circuit court to conclude the discovery request was "based on little more than a hunch that it might yield jurisdictionally relevant facts," *id.* at 1020; *see also Breakthrough Mgmt.*, 629 F.3d at 1190 (citing *Boschetto* for the principal that claims for discovery without factual support are insufficient to demonstrate the need for discovery).

Here Franklin Covey's complaint and affidavit are devoid of specific allegations that would support jurisdiction. Instead Franklin Covey's request for discovery is based on the fact that two Utah supervisors attended the seminar where the allegedly infringing materials were

used, (Dkt. No. 8-1 ¶ 12), and Mr. Montgomery's belief that, because ideas contained in Franklin Covey training materials would be "subsequently implement[ed]," Commercial Metals must have taught the Utah supervisors to "apply, implement, and exploit the training materials" in their home office. (Dkt. No. 15-1, ¶¶ 31–32.) Nonetheless, Franklin Covey argues that Commercial Metals violated the Copyright Act in Utah by distributing copied or derivative works in the state and analogized to cases in which the copied or derivative works were found in the forum state and the courts concluded they had personal jurisdiction. *See Collins v. Doe*, 2012 WL 1414246, at *5 (S.D. Tex. April 23, 2012) (unpublished) (concluding that the plaintiff had made a prima facie showing of specific personal jurisdiction by making an "uncontroverted statement" that she had seen the allegedly infringing magazine in multiple locations in the forum state and that the defendants failed to identify any other distributor of the magazine in the forum); *Blakeman v. The Walt Disney Co.*, 613 F. Supp. 2d 288, 303 (E.D. N.Y. 2009) (finding personal jurisdiction existed on a motion for summary judgment where the plaintiffs had alleged that the defendants supplied the plaintiff's work to distributors with knowledge that the work would be disseminated in the forum state).

This case is unlike those because neither the complaint nor Mr. Montgomery's affidavit actually support the claim that the Utah supervisors returned to Utah and distributed the workbooks or even that the workbooks ever entered Utah. It is Franklin Covey's burden to show that it is entitled to the discovery it seeks, but it has not provided any factual support for its claim that Commercial Metals was distributing the infringing materials in Utah and has not otherwise shown how the Utah supervisors attendance of the seminar in Arizona could constitute conduct relevant to a violation of the Copyright Act and to Utah. *See Gates Rubber Co. v. Bando Chem.*

*Indus.*, 9 F.3d 823, 836 (10th Cir. 1993) ("One of the fundamental tenets of copyright law is that protection extends only to the author's original expression and not to the ideas embodied in that expression."). Because it has not met its burden, Franklin Covey is not entitled to jurisdictional discovery.

**CONCLUSION**

In sum, Franklin Covey has not met its burden of showing jurisdiction or that it is entitled to jurisdictional discovery. Thus, the court GRANTS Commercial Metals's motion and DISMISSES this action for lack of jurisdiction.

DATED this 15th day of August, 2017.


BY THE COURT:


_____

Clark Waddoups
United States District Judge